IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
SENIOR JUDGE WALKER D. MILLER

Civil Action No. 04-cv-02260-WDM-KLM

PAUL BLANGSTED,

      Plaintiff,

v.

SNOWMASS-WILDCAT FIRE PROTECTION DISTRICT and
WILLIAM COWAN,

      Defendants.

## ORDER ON MOTION FOR JUDGMENT AS A MATTER OF LAW

Miller, J.

This matter is before me on Defendants' Motion For Judgment as a Matter of Law pursuant to Fed. R. Civ. P. 50.[1] I reserved ruling on the issue. The jury returned a verdict against Defendants and assessed punitive damages against Defendant Cowan in his individual capacity. After consideration of Defendants' arguments, I conclude the motion should be denied for the reasons that follow.

### Background

In this case, Plaintiff Paul Blangsted alleged that Defendant Snowmass-Wildcat

---

[1] Defendant filed a motion for summary judgment (Docket No. 78) based on qualified immunity on June 25, 2008. However, as the motion was filed outside the dispositive motion deadline set in the scheduling order, I struck the motion without prejudice to Defendant raising the issue pursuant to Rule 50 and construed the motion as a trial brief (Docket No. 111). Plaintiff subsequently filed a responsive trial brief on the issue of qualified immunity (Docket No. 117). At trial, Defendants moved for judgment as a matter of law based on qualified immunity and lack of a sufficient evidentiary basis to find for the Plaintiff.

Fire Protection District (the "District"), along with the individually named Defendant William Cowan, violated his First Amendment right of freedom of association when they terminated Plaintiff in retaliation for his leadership of and participation in a local firefighter's union. Plaintiff was apparently instrumental in organizing, forming, and participating in the union. Plaintiff's purposes for forming the union were to become eligible for benefits such as lower car insurance rates, provide training to the union members in such things as hazardous materials, and organize events such as a smoke detector battery drive and smoke detector giveaway. Plaintiff testified that he presented these ideas to both Chief Cowan and Captain Bruce Beardsley.

Plaintiff maintained that the reasons Defendants articulated for his termination were false and merely pretext for discrimination. Defendants argued that Plaintiff was terminated because management felt that he demonstrated undesirable and inappropriate behavior in connection with an alleged act of vandalism. The alleged vandalism occurred at the Snowmass Club (the "Club"), an exclusive, private country club that allowed the District's firefighters complimentary use of their facilities. Apparently, the Club had posted a sign which indicated that the racquetball courts would soon be closed. One night as he was leaving the Club after a union meeting, Plaintiff wrote on the poster "this sucks don't do it."[2] The Club was very upset by this action and suspended the District's complimentary use of the facilities.

Defendants further alleged that Plaintiff denied involvement in "vandalism" when questioned by Assistant Chief John Mele about the writing on the sign. During the

---

[2] This is what Plaintiff alleges that he wrote on the paper. The Club's marketing director, who testified at trial, alleges that Plaintiff wrote "this is bullshit."

meeting, Mele showed Plaintiff a somewhat poor quality surveillance video that showed Plaintiff standing in front of the sign, but Plaintiff still denied involvement. At trial, Plaintiff maintained that he did not understand what Mele was talking about when he referenced "vandalism." Mele suspended Plaintiff immediately after the meeting and Chief Cowan terminated Plaintiff four days later. The termination was later confirmed by the District's Board of Directors.

## Standard of Review

The standard for judgment as a matter of law "mirrors" the standard for summary judgment, "such that 'the inquiry under each is the same.'" *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000); *accord Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1168 n.9 (10th Cir. 2007) (citing *id.*). "A judgment as a matter of law is warranted 'only if the evidence points but one way and is susceptible to no reasonable inferences which may support the opposing party's position.'" *Herrera v. Lufkin Indus.*, 474 F.3d 675, 685 (10th Cir. 2007) (quoting *Riske v. King Soopers*, 366 F.3d 1085, 1088-89 (10th Cir. 2004) (quotation omitted)). I must review all the evidence on the record and "draw all reasonable inferences in favor of the nonmoving party." *Reeves*, 530 U.S. at 150. I may not "make credibility determinations or weigh the evidence." *Id.*

## Discussion

1. ### Qualified Immunity

Defendant Cowan argues that he is entitled to qualified immunity because it was not clearly established at the time of Plaintiff's termination that Plaintiff's union activities were protected by the First Amendment. "'The doctrine of qualified immunity shields

public officials . . . from damages actions unless their conduct was unreasonable in light of clearly established law.'" *Gann v. Cline*, 519 F.3d 1090, 1092 (10th Cir. 2008) (omission in original) (quoting *Elder v. Holloway*, 510 U.S. 510, 512 (1994)). "After a defendant asserts a qualified immunity defense, the burden shifts to the plaintiff" to satisfy a "heavy two-part burden." *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001) (citations omitted). "First, the plaintiff must demonstrate that the defendant's actions violated a constitutional or statutory right." *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995) (citations omitted). "Second, the plaintiff must show that the constitutional or statutory rights the defendant allegedly violated were clearly established at the time of the conduct at issue." *Id.* Generally, for the law to be clearly established "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must be as plaintiff maintains." *Farmer v. Perrill*, 288 F.3d 1254, 1259 (10th Cir. 2002). "'The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Casey v. City of Federal Heights*, 509 F.3d 1278, 1283–84 (10th Cir. 2007) (quoting *Saucier v. Katz*, 533 U.S. 194, 207 (2001))); *accord Gann*, 519 F.3d at 1092 ("To be clearly established '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987))). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson*, 483 U.S. at 640 (internal citation omitted);

*see Tonkovich v. Kan. Bd. Of Regents*, 159 F.3d 504, 516 (10th Cir. 1998) ("The key to the qualified immunity inquiry is the 'objective reasonableness of the official's conduct in light of the legal rules that were clearly established at the time the action was taken.'" (quoting *Melton v. City of Okla. City*, 879 F.2d 706, 727 (10th Cir. 1989))).

Although generally applicable to freedom of speech cases, the analysis set forth in *Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968), applies to freedom of association cases. *See Shurm v. City of Coweta, Okla.*, 449 F.3d 1132, 1138 (10th Cir. 2006); *Cobb v. Pozzii*, 363 F.3d 89 (2d Cir. 2004); *Boddie v. City of Columbus*, 989 F.2d 745 (5th Cir. 1993). The four-step Pickering analysis has been described by the Tenth Circuit as follows:

> First, the court must determine whether the employee's speech can be fairly characterized as constituting speech on a matter of public concern. If so, the court must then proceed to the second step and balance the employee's interest, as a citizen, in commenting upon matters of public concern against the interest of the State, as an employer, in promoting the efficiency of the public service it performs through its employees. Assuming that the Pickering balancing test tips in favor of the employee, the employee, under the third step, must prove that the protected speech was a substantial factor or a motivating factor in the detrimental employment decision. Finally, if the employee makes this showing, the burden then shifts to the employer to show by a preponderance of evidence that it would have reached the same decision . . . even in the absence of the protected conduct. Steps one and two concern whether the expression at issue is subject to the protection of the First Amendment. Thus, they present legal questions to be resolved by the court. In contrast, the third and fourth steps concern causation and involve questions of fact to be resolved by the jury.

*Gardetto v. Mason*, 100 F.3d 803, 811 (10th Cir. 1996) (internal quotations and citations omitted).

There does, however, remain a question as to whether the first *Pickering* element, matter of public concern, applies in freedom of association cases. *Shrum*, 449 F.3d at 1138. Neither the Supreme Court nor the Tenth Circuit has expressly determined whether the public concern element is applicable in a freedom of association claim. *Id.* There is also not a clear consensus from other circuits. *Id.* (noting that "[f]ive circuits have adopted the public concern requirement for freedom of association claims and two have not"). Relatedly, there remains a dispute as to whether an activity meets the public concern element merely because it is union related. The Tenth Circuit has stated, albeit in unpublished opinions, that an employee's speech or activity does not constitute a matter of public concern merely because it is union related. *See King v. Downing* 58 Fed. Appx. 830, 833 n.1 (10th Cir. 2003) (unpublished)[3] ("We note that an employee's speech or activity does not touch on a matter of public concern merely because it is union-related. Rather, courts consider the content, form, motive and context of the communications, as revealed by the whole record."); *Torres v. Pueblo Bd. Of County Comm'rs*, 229 F.3d 1165, 2000 WL 11346347, at * 4 (10th Cir. 2000) (unpublished) ("We are unwilling to hold that an employee's speech or activity touches on a matter of public concern merely because it is union related."). It is on these unpublished cases that Defendant moves for judgment as a matter of law, arguing that Plaintiff's union activities do not meet the public concern element. I avoided

---

[3] Although the Tenth Circuit does not allow citation to unpublished opinions for precedential value, unpublished opinions may be cited for persuasive value. 10th Cir. R. 32.1.

deciding these issues in the summary judgment Order, but now must decide them as part of the qualified immunity analysis. (*See* Docket No. 49.)

It is clear that the "First Amendment right of association protects the right of a public employee to join and participate in a labor union." *See Morfin v Albuquerque Pub. Schs.*, 906 F.2d 1434, 1438 (10th Cir. 1990). Defendant, however, does not accept this statement unless Plaintiff can meet the requirements of the *Pickering* analysis, in particular that the union activities involved matters of public concern which had to be balanced against the employer's interest in promoting efficiency of service. In short, the issue is whether Plaintiff must prove only some general involvement in union activity or meet a higher standard of proof of showing that any particular activity is a matter of public concern or, as Defendant argues, "look to specifics of what that union was all about."

Tenth Circuit case law is clear that the public concern element is not necessary when the union has negotiated a collective bargaining agreement. *See Shrum*, 449 F.3d at 1139 ("If a public employer retaliates against an employee for engaging in acts protected by the collective-bargaining agreement . . . then the employer cannot rely on the *Pickering* test to avoid First Amendment scrutiny."). In these cases, the employer has "contractually agreed to the legitimacy of the union and of its employees' association with the union" and therefore, it has "received the benefit of its bargain, and is estopped from claiming that its 'interests as an employer' are inconsistent with the freedom of its employees to associate with the union." *Id.* Although the *Shrum* Court's

reliance on estoppel makes *Shrum* distinguishable, I conclude that the right to engage in activity of organizing a union is itself protected by the First Amendment without the necessity of a court determination that any particular activity of that union is a matter of public concern. *See id.*; *see also Morfin*, 906 F.2d at 1438 ("The First Amendment right of association protects the right of a public employee to join and participate in a labor union."). The evidence as presented was that Plaintiff engaged in union organizing activities, the manager allegedly was anti-union, and there was no real dispute concerning the particular union activities.[4] Furthermore, engaging in a public concern analysis of a freedom of association claim based on general activity to form a union would inevitably require a determination of the worth of a particular union—a determination I do not think is the province of the court system. Indeed, the right to form and participate in a labor union is not based on whether those exterior to the employment context view the union as "good" or "bad" but rather as a right of association fully protected by the First Amendment. *See Morfin*, 906 F.2d at 1438.

The Tenth Circuit cases that Defendants rely upon do not compel a different conclusion. Both cases are unpublished; therefore, they are not binding precedent. Additionally, the statements regarding union activities in each case are properly classified as dicta; therefore, their persuasive value is significantly lessened. Finally,

---

[4] I note that the public concern analysis could apply to particular union activities if the adverse employment action was in retaliation for a particular union activity. This, however, is not the case here. Therefore, I conclude that it is not necessary to analyze the particular union activities under the public concern analysis.

the cases are factually distinguishable from this case. With respect to *King*, the plaintiff brought identical freedom of association and freedom of speech claims and, therefore, the Tenth Circuit applied the full *Pickering* analysis to both claims. *King*, 58 Fed. Appx. at 833 n.1. With respect to *Torres*, a wife was bringing a claim based, not on her own union activity, but on the union activity of her husband, a claim that the Tenth Circuit found more "properly asserted in the context of a marital association or free-speech claim." *Torres*, 229 F.3d 1165, 2000 WL 1346347, at * 3.

Therefore, I conclude that the right to participate in a union was clearly established at the time Plaintiff was terminated and that, therefore, it was clear to a reasonable official that terminating Plaintiff based on his union activities, in general, was unlawful. *See Gann*, 519 F.3d at 1092 ("To be clearly established, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." (citing *Anderson*, 483 U.S. at 1987)); *Morfin*, 906 F.2d at 1438 ("The First Amendment protects the right of a public employee to join and participate in a labor union." (citing, *inter alia*, *Smith v. Ark. State Highway Employees*, 441 U.S. 463, 465 (1979))). I do not address whether a particular activity, after the union was formed, is a matter of public concern.[5] Therefore, Defendant Cowan is not

---

[5] Nonetheless, if I were to focus on the particular union activities in which Plaintiff engaged, they are arguably matters of public concern. For example, one of Plaintiff's stated reasons for forming the union, of which there is evidence that Defendants were aware, was to have a smoke detector drive and give away smoke detectors to the public. An additional reason was to provide hazardous materials training to the firefighters. Arguably a reasonable person would know that these articulated activities were matters of public concern under the controlling law as they

entitled to qualified immunity.

2. <u>Sufficient Evidentiary Basis</u>

Defendants argue that the evidence presented at trial does not amount to a sufficient evidentiary basis upon which a verdict for the Plaintiff may be granted. First, they argue that there is insufficient evidence that Plaintiff's union activities constituted a matter of public concern. As discussed above, however, I conclude that it is not necessary to apply the public concern element as the right to organize a union is well-recognized (and acknowledged by Defendant's own testimony). See Morfin, 906 F.2d at 1439.

Second, Defendants argue that Plaintiff has not presented sufficient evidence that a reasonable jury could find that Plaintiff's union activities were a substantial or motivating factor for his termination. I disagree. Plaintiff presented evidence tending to show that Defendant Cowan harbored anti-union animus including that Defendant Cowan made statements to Captain Beardsley regarding his beliefs about the union and that Defendant Cowan was visibly angry when he spoke to Ken Schaer about his participation in the union. A reasonable jury could infer from this that Defendant Cowan was anti-union and that he terminated Defendant based on this animus. Although this

---

can "'be fairly considered as relating to any matter of political, social, or other concern to the community.'" *Withiam v. Baptist Health Care of Okla., Inc.*, 98 F.3d 581, 583 (10th Cir. 1996) (quoting *Connick v. Myers*, 461 U.S. 138, 146 (1983)). As such, it would be clear to a reasonable officer that terminating Plaintiff for engaging in these activities was unlawful. *See Gann*, 519 F.3d at 1092 ("To be clearly established, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." (citing *Anderson*, 483 U.S. at 1987)).

evidence is circumstantial, it provides sufficient evidentiary support from which a reasonable jury could determine that Defendants acted with anti-union animus.

Finally, Defendants argue that there is not sufficient evidence to support an instruction to the jury regarding punitive damages. Again, I disagree. Plaintiff presented evidence that Defendant Cowan knew that it was illegal to terminate someone based on his union activities. A reasonable jury could infer from this that Defendants acted with reckless disregard for Plaintiff's constitutional rights. *See Smith v. Wade*, 461 U.S. 30, 56 (1983) ("We hold that a jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.").

Accordingly, it is ordered that Defendants' Motion for Judgment as a Matter of Law is denied.

DATED at Denver, Colorado, on September 16, 2008.

BY THE COURT:

s/ Walker D. Miller
United States Senior District Judge