IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Walker D. Miller

Civil Action No. 04-cv-02260-WDM-KLM

PAUL BLANGSTED,

　　　Plaintiff,

v.

SNOWMASS-WILDCAT FIRE PROTECTION DISTRICT and
WILLIAM COWAN,

　　　Defendants.

---

## ORDER ON MOTIONS TO DISMISS AND FOR A NEW TRIAL

---

Miller, J.

　　　This matter is before me on Defendants' Motion for a New Trial Based on the Excessive Size of the Verdict or - In the Alternative - Motion for Remittitur (Docket No. 138); Defendants' Motion to Dismiss Based on Plaintiff's Spoliation of Relevant Evidence (Docket No. 141); Defendants' Motion for a New Trial Because the Verdict was Against the Weight of the Evidence (Docket No. 154); and Plaintiff's request for reinstatement pursuant to a favorable jury verdict entered July 23, 2008.   After a review of the pleadings and the parties' written arguments, I conclude oral argument is not required.  For the reasons that follow, Defendants' Motion for New Trial (Docket No. 138) shall be granted in part and denied in part and the motions shall otherwise be denied.  In addition, Plaintiffs' request for reinstatement is conditionally granted.

Background

PDF Final

In this case, Plaintiff Paul Blangsted alleged that Defendant Snowmass-Wildcat Fire Protection District (the "District"), along with Defendant William Cowan, violated his First Amendment right of freedom of association when they terminated Plaintiff in retaliation for his instrumental role in organizing, forming, leading, and participating in a local firefighter's union.  At trial, Plaintiff maintained that the reasons Defendants articulated for his termination were false and merely pretext for discrimination.  Defendants argued that Plaintiff was terminated because management felt that he demonstrated undesirable and inappropriate behavior in connection with an alleged act of vandalism on a sign.[1]  On April 16, 2004, upon Plaintiff's return from vacation, Assistant Chief John Mele met with and suspended Plaintiff for four days based on the vandalism incident.  Four days later, on April 20, 2004, Plaintiff returned to the fire department and met with Chief Cowan and Assistant Chief Mele (the "Termination Meeting").  Defendants allege that they remained silent at the beginning of this meeting to allow Plaintiff the opportunity to admit to his involvement in the vandalism.  When he did not do so, they terminated his employment with the fire department.  The termination was later confirmed by the District's Board of Directors.

After a three-day jury trial, the jury returned a verdict for Plaintiff awarding him

---

[1]  The incident occurred at the Snowmass Club (the "Club"), an exclusive, private country club that allowed the District's firefighters complimentary use of their facilities. Apparently, the Club had posted a sign which indicated that the racquetball courts would soon be closed.  According to one version, as he was leaving the Club after a union meeting, Plaintiff wrote on the poster "this sucks don't do it."  The Club was very upset by this action and suspended the District's complimentary use of the facilities.

$572,145.00 in compensatory damages and $10,000.00 in punitive damages against Defendant Cowan individually.  At trial, Plaintiff testified that his economic damages of lost wages and benefits were $72,145, and this number was essentially unrebutted.  It is reasonable, therefore, to conclude that $500,000 of the compensatory damages award is for emotional distress, pain and suffering and other related factors.[2]  In their three motions, Defendants seek either dismissal, a new trial, or *remittitur* of the non-economic compensatory damages award.

Discussion

1.      Excessive Size of the Verdict

Defendants' first motion (Docket No. 138) seeks a new trial pursuant to Fed. R. Civ. P. 59 based on the size of the verdict or, alternatively, *remittitur* of the $500,000 non-economic compensatory damages award to $50,000.  Plaintiff opposes this request, arguing that neither remedy is appropriate in this case as the size of the verdict is not so excessive as to overcome the substantial deference afforded to jury verdicts.

"It [is] the jury's function, as the trier of fact, to determine the amount of damages that would fairly compensate [the plaintiff], and the jury has wide discretion

---

[2]  The jury instructions indicated that the jury could award Plaintiff two types of compensatory damages: (1) "the reasonable value of Plaintiff's wages and fringe benefits he would have earned in his employment with the Defendant District if he had not been discharged on April 20, 2004, less the amount of earnings and benefits from other employment received by Plaintiff during that time"; and (2) "damages for any emotional distress, pain, suffering, inconvenience, and loss of enjoyment of life Plaintiff experienced as a consequence of Defendants' wrongful conduct."  (Trial Transcript - Day Three, Docket No. 127 at 78–79.)

in making that determination." *Black v. Hieb's Enters., Inc.*, 805 F.2d 360, 362–63 (10th Cir. 1986) (citing *Bennett v. Longacre*, 774 F.2d 1024, 1028 (10th Cir. 1985) ("It is a fundamental legal principle that the determination of the quantum of damages in civil cases is a fact-finder's function. The trier of the facts, who has the first-handed opportunity to hear the testimony and to observe the demeanor of the witnesses, is clothed with a wide latitude and discretion in fixing damages, pursuant to the court's instructions, deemed proper to fairly compensate the injured party.")).  Indeed, "[i]t is within the virtually exclusive purview of the jury to evaluate credibility and fix damages." *United Int'l Holdings, Inc. v. Warf (Holdings) Ltd.*, 210 F.3d 1207, 1230 (10th Cir. 2000).  Therefore, "'absent an award so excessive or inadequate as to shock the judicial conscience and to raise an irresistible inference that passion, prejudice, corruption, or other improper cause invaded the trial, the jury's determination of the fact is considered inviolate.'" *Hynes v. Energy West, Inc.*, 211 F.3d 1193, 1206 (10th Cir. 2000) (quoting *Campbell v. Bartlett*, 975 F.2d 1569, 1577 (10th Cir. 1992)).  "[I]f the court determines that the verdict was the result of passion or prejudice, or for any other reason it appears that the jury erred or abused its discretion not only on the issue of damages but also on the issue of liability, the court must unconditionally order a new trial and cannot give the plaintiff the option to accept a lesser amount." *Malandris v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 703 F.2d 1152, 1168 (10th Cir. 1983).  If, however, "the court concludes there was error only in an excessive damage award, but not one also tainting the finding of liability, the . . . court may order a remittitur and alternatively direct a new trial if the

plaintiff refuses to accept the remittitur." *Id.*

In this case, Defendants argue that, given the limited evidence presented at trial regarding Plaintiff's emotional distress, the jury's award of $500,000 in non-economic damages is so excessive that it requires a new trial or, in the alternative, a *remittitur*. The only evidence regarding Plaintiff's emotional distress was his own testimony which revealed that he had difficulties in telling his parents that he had been terminated from the fire department; in seeing his friends who were still employed by the District after the termination; in living in a small community where he had been accused of lying; and in dealing with the fact that he was terminated for working towards something positive for the fire department; *i.e.*, the benefits of unionization. Plaintiff had wanted to be a firefighter since he was a child, following in his father's footsteps; he had worked for the District as a firefighter for nine years without any disciplinary action; and had taken on additional responsibilities in the department. He experienced trouble sleeping and testified that it "weighed on my mind what I was going to do, as far as how my life was going to continue, with employment and such." Otherwise, however, there was no evidence that Plaintiff suffered any physical manifestation of his emotional distress or that he sought any professional health care and he presented no corroborating evidence.

Shortly after his termination Plaintiff was able to find another job, albeit not as a firefighter, and his salary increased over time so that he was eventually making more than he was as a firefighter with the District. Although Plaintiff had to use his retirement money, at a penalty, to cover his living expenses during the periods when

he was not employed or making less money than he did as a firefighter, there was no evidence of severe financial hardship as a result of his termination.

Given this and other evidence presented at trial regarding the circumstances of Plaintiff's termination, I "cannot conclude that *some* award for such anguish and distress is unsupported by substantial evidence." *Wulf v. City of Wichita*, 883 F.2d 842, 875 (10th Cir. 1989). Although the damage award in this case is quite large, it is not "'so excessive . . . as to shock the judicial conscience and to raise an irresistible inference that passion, prejudice, corruption, or other improper cause invaded the trial.'" *Hynes*, 211 F.3d at 1206 (quoting *Campbell*, 975 F.2d at 1577). Accordingly, the jury's determination of liability is not so tainted and I am not constrained to order a new trial. *See Malandris*, 703 F.2d at 1168. Nevertheless, I must still consider whether the damage award was excessive, requiring a *remittitur. Id.* Of the damages awarded, clearly the specific amount of $72,145, precisely based on the Plaintiff's uncontested testimony, cannot be deemed excessive and the focus of the inquiry is whether the $500,000 compensatory award for emotional distress, pain and suffering, etc. is excessive.

When determining whether the $500,000 award is excessive, my consideration should include the following factors: (1) the nature and severity of the conduct violating the plaintiff's rights; (2) the nature and extent of the harm suffered by the plaintiff; (3) whether medical or other healthcare assistance was sought; (4) whether the plaintiff could continue to work in his chosen field; (5) the context or circumstances of defendant's acts; and (6) corroborating, objective evidence. *See*

6

*Smith v. Nw. Fin. Acceptance, Inc.*, 129 F.3d 1404, 1416–17 (10th Cir. 1997) (upholding a $200,000 award in a sexual harassment case).  The jury concluded the Plaintiff lost his job for exercising his First Amendment rights to organize and participate in a union with his fellow firemen.  That is a harsh consequence for the exercise of protected rights.  The loss of the job in his chosen field is significant; however, the evidence is unclear whether his ability to continue as a fireman was tied to his lack of qualifications or the fact that his chosen alternative employment has apparently paid him more.  Although such evidence is not required, Plaintiff apparently did not seek medical or psychological aid from a healthcare provider and such testimony is certainly a suggested method of proving emotional damage.  *Id.* at 1417.  The context or circumstances of the termination include evidence of Defendants' antagonism to union activity.  Plaintiff's entire case, however, rests solely on his own testimony.  That evidence does indicate harm resulting from the termination, including emotional distress caused by loss of his desired career position, being labeled a liar, difficulty sleeping and other negative impacts.  That is balanced against the reality that he is a comparatively young person and has obtained other employment with higher compensation.  The absence of any physical manifestation of emotional distress other than some difficulty sleeping and the absence of any corroborating, objective evidence from any source weighs against a high damage award.

The Tenth Circuit recognizes comparison to other cases as an appropriate measure of excessiveness.  *Wulf*, 883 F.2d at 875.  The award in this case is

substantially higher than other damage awards in this Circuit in the First Amendment or discrimination context.[3]  *See, e.g.*, *Evans v. Fogarty*, 241 Fed. App'x 542, 561–62 (10th Cir. Aug. 22, 2007) (unpublished)[4] (upholding awards of $300,000 and $150,000 for two plaintiffs in a First Amendment retaliation case); *Jackson v. Potter*, 587 F.Supp.2d 1197, 1200 (D. Colo. 2008) (upholding an award for $200,000 in discrimination case); *Clawson v. Mtn. Coal Co., LLC*, 2007 WL 425578 (D. Colo. Nov. 28, 2007) (unpublished) (upholding $250,000 award for claims made pursuant to the Americans with Disabilities Act).  Although "comparisons with other cases are not dispositive," they do provide guidance.  *Id.*  Indeed, the Tenth Circuit recently commented that awards of $300,000 and $150,000 for two separate plaintiffs "appear to be at the upper range of emotional damages upheld in this Circuit."  *Evans*, 241 Fed. App'x at 561.

Similarly, the Title VII limitation for compensatory damages of $50,000 to $300,000, depending upon the size of the employer, supports a conclusion at the upper limit for emotional distress damages is significantly less than awarded by the jury in this case.  *See* 42 U.S.C. § 1981a(b)(3).  The record indicates the number of employees of the Defendant District is less than 20 which would limit the compensatory damages under Title VII to $50,000.  Disregarding distinctions based

---

[3]  To the extent that Defendants argue that the case law in this circuit shows that $50,000 is the upper ceiling for emotional distress damages, the cited cases demonstrate that emotional damages far in excess of $50,000 have been upheld.

[4]  Although the Tenth Circuit does not allow citation to unpublished opinions for precedential value, unpublished opinions may be cited for persuasive value. 10th Cir. R. 32.1.

on the number of employees, the statute reflects a legislative judgment that non-economic damages should be limited to $300,000 for even the largest employer.  *Id*.

I also note that the $500,000 is more than 7 times the special damages of lost wages, etc.  Such a multiple greatly exceeds such commonly used measures for pain and suffering as an approximate factor of 3 which results in a similar range of $200,000 to $300,000.

Considering all of these factors I conclude that the $500,000 award is excessive but since the verdict itself was not so tainted as to require a new trial, I may either order a new trial or a *remittitur*.  Given my familiarity with the evidence and the instant considerations, I am able to conclude what is a reasonable amount of damages that should be awarded.[5]

In setting the amount of the *remittitur*, Defendants' arguments are of little assistance.[6]  Mindful of the evidence of significant harm to Plaintiff and the jury's

---

[5]  In determining the amount of the *remittitur*, three different approaches have been recognized: awarding the lowest amount supported by the record; awarding the highest amount; and the amount the court deems reasonable.  *Moore's Federal Practice*, 3d Ed., § 59.13[2][g][D].  Given the considerations stated herein, there is no bright line to distinguish a reasonable recovery from a "maximum recovery."

[6]  Defendants' argument for a *remittitur* to $50,000 is unpersuasive.  In support of such argument Defendants cite to cases that I find neither controlling nor persuasive as they are from outside this Circuit, mostly more than twenty-five years old, or do not address the issue at hand in this case.  *See Scagnelli v. Whiting*, 554 F.Supp. 77, 81–82 (M.D. N.C. 1982) (setting aside a compensatory damage award of $300,000 in a discrimination and First Amendment case); *Dossett v. First State Bank*, 288 F.3d 940, 947 (8th Cir. 2005) (concluding that the district court did not abuse its discretion in ordering a new trial when the compensatory damage award was $1.5 million); *Bush v. Texaco, Inc.*, 504 F.Supp. 670, 672–73 (D.C. Tex. 1981) (setting aside a $406,000 award for lost wages and pain and suffering in a personal injury case where there was evidence that the injury could be cured in a relatively short time with surgery and plaintiff

judgment that the circumstances of this case warrant a high emotional damage award, I conclude that an award at the upper end of what the Tenth Circuit considers an acceptable range for this type of damages is appropriate.  I set that amount at $250,000 together with the $72,145 or $352,145.  Plaintiff shall be required to elect between the *remittitur* so reducing the damage award or a new trial on the issue of damages.

2.    <u>Spoliation</u>

       Defendants' second motion (Docket No. 141) seeks dismissal of the case or a new trial based on Plaintiff's destruction or loss of his tape recording of the Termination Meeting.  Apparently, Plaintiff, "concern[ed] about what might transpire at this meeting",  brought a small microcassette recorder with him to the Termination Meeting.  Plaintiff indicates that he believes he began recording while in a hallway prior to entering Chief Cowan's office for the Termination Meeting.  Approximately one week after the Termination Meeting, Plaintiff played the recording for his

---

suffered only mild physical pain); *Richardson v. Commc'ns. Workers of Am.*, 530 F.2d 126, 129–30 (8th Cir. 1976) (holding that the trial court did not abuse its discretion in ordering a new trial based on a $250,000 award for a mental distress claim).
       I also note that *Wulf's* conclusion that an award of $250,000 was excessive in a discrimination case where the plaintiff testified that he was "angry, depressed, scared and frustrated" does not persuade me that the award in this case is similarly excessive. Again, *Wulf* was decided twenty years ago.  Furthermore, *Wulf* did not establish a bright line rule for emotional distress awards, but determined, on the facts of the particular case, that the award was unjustified and excessive.  *See Evans*, 241 Fed. App'x at 562 ("Nothing in *Wulf* contradicts the basic principle that a jury's damages award is highly specific to the facts and circumstances of the case.")  Here, as discussed above, I conclude that in light of the facts presented at the trial and the current consensus in this Circuit regarding the range for emotional distress damages, an award of $250,000 for emotional distress is warranted.

colleague, firefighter Jason Hutter.  Shortly thereafter, Plaintiff placed the

microcassette tape on his desk in his bedroom.  Plaintiff alleges that approximately

one to two months later he noticed that the tape was no longer on his desk.  He

searched his apartment but did not find the tape.  Plaintiff now guesses that the tape

was accidentally thrown away, possibly by himself.  It is undisputed that Plaintiff did

not use the recording for any purpose during his administrative appeals or in this

case.  In fact, Plaintiff alleges that he did not meet with an attorney until late July

2004 regarding the possibility of filing a lawsuit and did not file this lawsuit until

October 28, 2004—both well after the time that he lost track of the tape.  Based on

the loss of the recording, Defendants move for dismissal of the entire action or,

alternatively, a new trial.

"'Spoliation is the destruction or significant alteration of evidence, or failure to

preserve property for another's use as evidence in pending or reasonably

foreseeable litigation.'"  *Allstate Ins. Co. v . Hamilton Beach/Proctor Silex, Inc.*, 473

F.3d 450, 457 (2d Cir. 2007) (citing *West v. Goodyear Tire & Rubber Co.*, 167 F.3d

776, 779 (2d Cir. 1999)).  Federal courts have authority to impose a variety of

sanctions for spoliation including dismissal of the action.  *See Burlington N. & Santa*

*Fe Ry. Co. v. Grant*, 2007 U.S. App. LEXIS 22680, at *43 (10th Cir. Sept. 24, 2007)

(unpublished).  This power derives from the inherent power of the court "necessary

'to manage their own affairs so as to achieve the orderly and expeditious disposition

of cases.'" *Jordan F. Miller Corp. v. Mid-Continent Aircraft Serv., Inc.*, 1998 U.S. App.

LEXIS 2739, at *11 (10th Cir. Feb. 20, 1998) (unpublished) (quoting *Chambers v.*

*NASCO, Inc.*, 501 U.S. 32, 43 (1991)).  "When deciding whether to sanction a party

for the spoliation of evidence, courts have considered a variety of factors, two of

which generally carry the most weight: 1) the degree of culpability of the party who

lost or destroyed the evidence; and (2) the degree of actual prejudice to the other

party."  *Id.* at  *13.  The Tenth Circuit recently found "[a] spoliation sanction . . .

proper where (1) the party has a duty to preserve evidence because it knew, or

should have known, that litigation was imminent, and (2) the adverse party was

prejudiced by the destruction of evidence."  *Burlington N.*, 2007 U.S. App. LEXIS

22680, at *44 (citing *103 Investors I, L.P. v. Square D. Co.*, 470 F.3d 985, 989 (10th

Cir. 2006)); *see also Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.*, 2007 U.S.

Dist. LEXIS 15277, at *21–22 (D. Colo. Mar. 2, 2007) (unpublished) (holding that to

consider whether to apply a spoliation sanction, the evidence must be relevant to an

issue in the case and the party who destroyed the evidence must be under a duty to

preserve the evidence).  However, the destruction need not be in bad faith to warrant

spoliation sanctions.  *Jordan F. Miller Corp.*, 1998 U.S. App. LEXIS 2739, at *13.

In this case, Defendants argue that Plaintiff's loss of the tape constitutes a

discovery violation for which they are entitled to a spoliation sanction.  First, they

argue that Plaintiff destroyed the tape at a time when he knew or should have known

that litigation was imminent.  In fact, Defendants argue that Plaintiff's pursuit of

administrative remedies before the District's Board of Directors constitutes litigation

and, therefore, the tape was destroyed after litigation had already commenced.

Alternatively, they argue that because the Board informed Plaintiff that it was

upholding his termination by letter dated June 3, 2004, he knew by that date that the next step was litigation.  Second, Defendants argue that the tape is relevant because it would confirm Chief Cowan's and Assistant Chief Mele's testimony that there was a lengthy pause at the beginning of the Termination Meeting which constituted Plaintiff's opportunity to admit to his involvement in the vandalism and thereby avoid termination for dishonesty.  Defendants argue that they were prejudiced by the destruction of the tape because they were deprived of the use of the tape at trial to support their version of the Termination Meeting.  Finally, Defendants argue that Plaintiff's failure to inform them of the existence of the tape at all prejudiced them by depriving them of the opportunity to move for an adverse inference instruction at trial. *See Aramburu v. The Boeing Co.*, 112 F.3d 1398, 1407 (10th Cir. 1997) ("[T]he general rule is that bad faith destruction of a document relevant to proof of an issue at trial gives rise to an inference that production of the document would have been unfavorable to the party responsible for its destruction." (citations omitted)).

Plaintiff responds that he did not perpetrate a discovery violation and that even if he did, the drastic sanctions of dismissal or a new trial are not warranted.  First, Plaintiff argues that, at the time he lost the tape, litigation was not imminent.  Plaintiff contends that merely availing himself of the District's internal grievance procedure does not constitute commencing litigation nor demonstrate that litigation was imminent.  Second, Plaintiff disputes that the tape is relevant to any issue at trial. There is no dispute as to what was actually said during the Termination Meeting, but only as to whether there was a period of silence prior to the start of the meeting.

Plaintiff argues that attaching weighty significance to the tape ignores the "mountain of evidence" that Plaintiff's termination was decided prior to the Termination Meeting, such as the fact that Plaintiff's final check was prepared the day before. Plaintiff also contends that due to the "chain of command" nature of the fire department, any argument that he was supposed to begin the Termination Meeting is nonsensical as he was inferior in rank to both Chief Cowan and Assistant Chief Mele. Finally, Plaintiff maintains that Defendants did not suffer any prejudice because the only thing that the tape demonstrates that is in dispute is whether there was a period of silence at the beginning of the Termination Meeting. As discussed above, Plaintiff alleges that this period of silence is irrelevant to a determination of whether his termination was unlawful. Plaintiff also argues that Defendants were not deprived of the benefit of an adverse inference jury instruction because they would not have been entitled to such an instruction as there is no evidence that he acted in bad faith.[7]  *See Aramburu*, 112 F.3d at 1407 ("The adverse inference must be predicated on the bad faith of the party destroying the records. Mere negligence in losing or destroying records is not enough because it does not support an inference of consciousness of

_____

[7] Plaintiff also argues that even though he did not disclose the existence of the tape, he sufficiently answered Defendants' discovery request because the request only asked for "statements of witnesses" and not for tape recordings of conversations or meetings. Under the liberal discovery rules, *see Herbert v. Lando*, 441 U.S. 153, 177 (1979) ("The Court has more than once declared that the deposition-discovery rules are to be accorded a broad and liberal treatment to effect their purpose of adequately informing the litigants in civil trials."), Defendants are not required to specifically ask for recordings of the Termination Meeting, but rather must only describe what they are seeking with "reasonable particularity," Fed. R. Civ. P. 34(b)(1)(A). As Defendants' request for production specifically mentioned "tape recorded" statements of witnesses (*See* Docket No. 141-4 at 10), the request likely covered the tape.

a weak case." (internal citations omitted)).

After considering the parties' arguments, I conclude that neither dismissal nor a new trial is warranted here. First, there is no indication that Plaintiff lost or destroyed the tape while litigation was imminent. I agree with Plaintiff that mere employment of the internal grievance procedure does not constitute commencing litigation. Initiating a federal lawsuit is a completely separate and distinct undertaking than availing oneself of a built-in internal grievance procedure. In fact, generally one of the purposes behind administrative remedies is to avoid litigation altogether. *See Fair Assessment in re Al Estate v. McNary*, 454 U.S. 100, 122 () ("[A]dministrative remedies, while based primarily on concerns of judicial administration, . . . reflects principles of avoidance of unnecessary litigation, deference to administrative expertise, and notions of administrative autonomy." (internal citations omitted)). Furthermore, as Plaintiff did not seek an attorney until late July, approximately two months after he alleges he last saw the tape, it does not appear that litigation was imminent at the time he lost the tape. Indeed, Plaintiff's internal grievance appeal was not finalized, thereby giving Plaintiff cause to consider a lawsuit, until June 3, 2004—approximately a month after Plaintiff alleges he last saw the tape.

Most importantly, any prejudice to Defendants was relatively small. Depending on its contents, playing the tape at trial may have somehow supported Defendants' version of the Termination Meeting as it might demonstrate a long period of silence at its beginning. Defendants argue this would show Plaintiff was given the opportunity to "come clean" and his failure to do so supports their defense that Plaintiff was

terminated for not being honest about the vandalism.  Defendants presented that

defense to the jury and the tape evidence might somehow have added weight.  The

reality is, however, that there was significant other evidence supporting Plaintiff's

theory of the case including evidence of comments made by Chief Cowan tending to

show that he harbored an anti-union animus.  In this regard, it is important to note

that there is no dispute about what was actually said during the Termination Meeting,

*i.e.*, it is undisputed that Plaintiff was never asked about the vandalism nor even if he

wanted to say anything at all.  The issue of whether there was a period of silence at

the beginning of the Termination Meeting was thus not the deciding factor in this case

as there was additional evidence demonstrating Defendants' anti-union motivation.

Furthermore, both Chief Cowan and Assistant Chief Mele testified that there was a

period of silence at the beginning of the Termination Meeting.  Although playing the

tape would presumably demonstrate whether this was true and how long that pause

was, the Defendants were not entirely deprived of arguing that Plaintiff was given the

opportunity to admit to his actions with respect to the sign.  Therefore, given the

extent and type of other evidence tending to show that Defendants were unlawfully

motivated, I conclude that any prejudice from not showing that Plaintiff did not

volunteer any comments even though he was asked no questions is insignificant.

Furthermore, I conclude that Defendants were not prejudiced by Plaintiff's

failure to disclose that a tape recording of the Termination Meeting ever existed as

there is no evidence to support a finding of bad faith destruction.  *See Aramburu*, 112

F.3d at 1407 ("The adverse inference must be predicated on the bad faith of the party

destroying the records.  Mere negligence in losing or destroying records is not enough because it does not support an inference of consciousness of a weak case."). There is no direct evidence of bad faith and the circumstantial evidence in this case is insufficient to support a finding of bad faith.  This is not a case such as *Adams v. Gateway, Inc.*, 2006 WL 2563418 (D. Utah Mar. 22, 2006), cited by Defendants, in which a party has demonstrated a pattern of failing to disclosed relevant and requested discovery materials.  Plaintiff's alleged history of untruthfulness with respect to the vandalism was a contested issue at trial, one apparently resolved in Plaintiff's favor by the jury.

Based on my conclusions that the degree of culpability of Plaintiff was small, *i.e.*, litigation was not imminent when Plaintiff lost the tape and there is no evidence of bad faith, and the degree of prejudice suffered by Defendants was minimal, I conclude that neither dismissal nor a new trial is an appropriate sanction for Plaintiff's actions in this case.  *See Jordan F.*, 1998 U.S. App. LEXIS 2739, at *11.  With respect to dismissal, consideration of the framework for dismissing an action as a sanction demonstrates that dismissal is not appropriate.  *See Archibeque v. Atchison, Topeka & Santa Fe Ry. Co.*, 70 F.3d 1172, 1174 (10th Cir. 1995) (discussing the factors set forth in *Ehrenhaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992)). Three of the five factors weigh against dismissal: Defendants did not suffer severe prejudice, Plaintiff's culpability is low, and Plaintiff was not previously warned that dismissal was a possible sanction.  *See Ehrenhaus*, 965 F.2d at 921.  I find the other two factors, although favoring a sanction, weigh only slightly in favor of dismissal: the

interference with the judicial process was relatively low, and other sanctions, as discussed *infra*, are adequate under these circumstances.

I conclude that a new trial is also not warranted based on Defendants' recent discovery of the tape. "In order to obtain a new trial based on newly discovered evidence, the moving party must show that (1) the evidence was newly discovered since the trial; (2) he was diligent in discovering the evidence; (3) the newly discovered evidence is not merely cumulative or impeaching; (4) the newly discovered evidence would have been material; and (5) a new trial with this newly discovered evidence would probably produce a different result." *Wolfgang v. Mid-America Motorsports*, 111 F.3d 1515, 1529 (10th Cir. 1997) (citing *Joseph v. Terminix Int'l Corp.*, 17 F.3d 1282, 1285 (10th Cir. 1994)). In this case, although there is newly discovered material evidence that Defendants were diligent in discovering, as discussed above, the introduction of the evidence at trial would not "probably produce a different result" and, therefore, a new trial is not warranted.

Nevertheless, Plaintiff should have disclosed the existence and subsequent loss of the tape during the discovery process and his failure to do so led to this particular dispute causing expenses for all. This reality will be taken into account when considering any claim for costs and attorney fees.

3.    Weight of the Evidence

Finally, Defendants move for a new trial pursuant to Fed. R. Civ. P. 59 (Docket No. 154) because the weight of the evidence presented at trial does not support the verdict. "Where a new trial motion asserts that the jury verdict is not supported by

the evidence, the verdict must stand unless it is clearly, decidedly, or overwhelmingly against the weight of the evidence." *Anaeme v. Diagnostek, Inc.*, 164 F.3d 1275, 1284 (10th Cir. 1999) (internal quotation omitted) (quoting *York v. American Tel. & Tel. Co.*, 95 F.3d 948, 958 (10th Cir. 1996)).  In weighing the sufficiency of the evidence, I must consider "the evidence in the light most favorable to the prevailing party."[8] *Snyder v. City of Moab*, 354 F.3d 1179, 1187 (10th Cir. 2003).  I must also be mindful that "'the jury . . . has the exclusive function of appraising credibility, determining the weight to be given to the testimony, drawing inferences from the facts established, resolving conflicts in the evidence, and reaching ultimate conclusions of fact.'" *United Phosphorus, Ltd. V. Midland Fumigant, Inc.*, 205 F.3d 1219, 1226 (10th Cir. 2000) (quoting *Kitchens v. Bryan County Nat'l Bank*, 825 F.2d 248, 251 (10th Cir. 1987)).

---

[8]  Defendants argue that the evidence is not to be viewed in the light most favorable to the non-moving party citing to a recent Tenth Circuit case, *Henning v. Union Pac. R.R. Co.*, in which the Tenth Circuit stated "[a] motion for a new trial, however, neither requires nor even envisions that the court view the evidence in such a light."  530 F.3d 1206, 1217 (10th Cir. 2008).  This statement, however, was not made in relation to a weight of the evidence motion, but rather in relation to a motion for a new trial based on evidentiary errors and errors in the jury instructions.  *See id.* at 1216.  Indeed, the standard articulated by the Tenth Circuit was different from that applied to a weight of the evidence motion.  *See id.* at 1217 ("[A] new trial may be granted if the district court concludes the 'claimed error substantially and adversely' affected the party's rights." (citation omitted)).  Furthermore, in a case decided after *Henning*, the Tenth Circuit reiterated that, in a weight of the evidence motion, the court must view the evidence in the light most favorable to the prevailing party.  *See DIRECTV, Inc. v. Crespin*, 224 Fed. App'x 741, 754 (10th Cir. 2008) (unpublished).  Therefore, in this case I must view "the evidence in the light most favorable to the prevailing party." *Snyder v. City of Moab*, 354 F.3d 1179, 1187 (10th Cir. 2003).

Although under a slightly different standard,[9] I already determined that Plaintiff

presented sufficient evidence such that a reasonable jury could infer that Defendants

unlawfully terminated Plaintiff based on an anti-union animus.  Indeed, Plaintiff

presented evidence that his termination shortly followed the union activity; there was

only a short investigation into the vandalism incident; the vandalism incident was

never mentioned and Plaintiff was never questioned directly regarding his

involvement in the vandalism during the short Termination Meeting; Plaintiff's final

check was prepared the day before the Termination Meeting; the District took steps

to prevent captains from joining the union;[10] the District announced that anyone

caught wearing union clothing would be escorted from the property; and, most

importantly, that Chief Cowan angrily spoke about "his beliefs" about the union, was

dismissive of the union,[11] and became visibly angry when he spoke to another

---

[9]  After trial, Defendants moved for judgment as a matter of law based on insufficiency of the evidence.  "A judgment as a matter of law is warranted 'only if the evidence points but one way and is susceptible to no reasonable inferences which may support the opposing party's position."  *Herrera v. Lufkin Indus.*, 474 F.3d 675, 685 (10th Cir. 2007) (quoting *Riske v. King Soopers*, 366 F.3d 1085, 1088–89 (10th Cir. 2004)).

[10]  Although the jury instructions indicated that "[a]ny rule of the district that prohibits supervisory employees from belonging to the same union as non-supervisory employees does not, by itself, constitute evidence of anti-union animus" (Trial Transcript - Day Three, Docket No. 127 at 76), the jury was not precluded from considering this evidence in conjunction with other evidence as evidence of anti-union animus.

[11]  Additionally, although the jury instructions indicated that "any statement by the management of the district that it would not recognize a union does not, by itself, constitute evidence of anti-union animus" (Trial Transcript - Day Three, Docket No. 127 at 76), this evidence could have been considered in conjunction with other evidence to demonstrate anti-union animus.

firefighter about his participation in the union.  Based on this evidence, even though

circumstantial, a reasonable jury could conclude that Plaintiff was unlawfully

terminated.  *See Butcher v. City of McAlester*, 956 F.2d 973, 975 (10th Cir. 1992)

("[O]f course, in a § 1983 proceeding circumstantial evidence generally plays a major

role.")  Therefore, I cannot conclude that the verdict was "clearly, decidedly, or

overwhelmingly against the weight of the evidence."  *Anaeme*, 164 F.3d at 1284

(internal quotation omitted) (quoting *York*, 95 F.3d at 958).  Indeed, it is the jury's

duty to weigh the evidence, assess the credibility of testimony, and come to a

resolution of the case.  *See United Phosphorus*, 205 F.3d at 1226 (quoting *Kitchens*,

825 F.2d at 251).  In this case, although Defendants presented evidence supporting

their contention that Plaintiff was terminated for dishonesty and vandalism, the jury

obviously gave greater weight to the substantial evidence presented by Plaintiff and

concluded that Plaintiff was unlawfully terminated.[12]

4.   Reinstatement

        Following trial and separate hearing and briefing, Plaintiffs persists in his

request for reinstatement.  Generally, "reinstatement is the preferred remedy for

discrimination in employment matters in all but special instances of unusual work

---

[12]  I also note that Defendants' reliance on *Butcher* is misplaced.  Although the *Butcher* Court upheld a jury verdict for a plaintiff based on somewhat stronger evidence that was presented by Plaintiff in this case, it does not follow that anything less than the evidence presented in *Butcher* would be insufficient to uphold a jury's verdict.  *See Butcher*, 956 F.2d at 978 (noting, *inter alia*, threats by management regarding participation in the union).  Indeed, nothing in *Butcher* suggests that the evidence was the least amount of evidence sufficient to support a finding of liability under section 1983.  *See id.*

place hostility or other aggravating circumstances which may make reinstatement impossible." *Bingman v. Natkin & Co.*, 937 F.2d 553, 558 (10th Cir. 1991); *accord Marshall v. TRW, Inc. Reda Pump Div.*, 900 F.2d 1517, 1522 n.4 (10th Cir. 1990) ("[R]einstatement is the preferred remedy, but where reinstatement is inappropriate because of 'extreme hostility' in the work place future damages may be awarded." (citing *EEOC v. Prudential Fed. Savs. & Loan Ass'n*, 763 F.2d 1166, 1172–73 (10th Cir. 1985))); *Jackson v. City of Albuquerque*, 890 F.2d 225, 231 (10th Cir. 1989) ("'[R]einstatement usually will be granted when a plaintiff prevails in a wrongful discharge case . . . .'" (quoting *Starrett v. Wadley*, 876 F.2d 808, 824 (10th Cir. 1989))).  However, there are instances in which reinstatement is not appropriate including when there is "extreme hostility' in the work place, instances where no comparable job was available, . . . when the time period for an award of front pay was very short[, or when] . . . general hostility in the work place remain[s] impossibly high.'" *Bingman*, 937 F.2d at 558 (citing *Anderson v. Phillips Petroleum*, 861 F.2d 631 (10th Cir. 1988) and *Jackson*, 890 F.2d 225).  Notably, the hiring of a replacement worker is not sufficient to deny reinstatement to a plaintiff.  *See Jackson*, 890 F.2d at 233–44 ("'While reinstatement may displace an innocent employee, the enforcement of constitutional rights (may have) disturbing consequences.  Relief is not restricted to that which would be pleasing or free of irritation.'" (quoting *Reeves v. Clairborne County Bd. of Educ.*, 828 F.2d 1096, 1101–02 (5th Cir. 1987))).

In this case, Defendants argue that reinstatement is not appropriate for three reasons: (1) Plaintiff no longer holds the required EMT certification; (2) Plaintiff has

demonstrated that he is no longer trustworthy, a necessary quality for the job; and (3)

an existing firefighter would have to be terminated to accommodate Plaintiff's

reinstatement.

      a.    *EMT Certification*

     First, Defendants argue that reinstatement is not appropriate in this case

because Plaintiff does not have the required EMT-Paramedic certification, or even

the EMT-Basic certification.[13]   Plaintiff has never held an EMT-Paramedic certification

although he previously held an EMT-Basic certification.  However, he has let this

certification lapse,[14] allegedly because the District was no longer paying for his

continuing education and he was not using the skills in his new position.  Since the

jury verdict, however, he has taken steps to renew his EMT-Basic certification

including completing the EMT-Basic coursework and sitting for and passing the

National Registry test.  Plaintiff asserts that he should receive his EMT-Basic

certification "as soon as the State of Colorado processes paperwork which must be

submitted in order to become a certified EMT-B in Colorado."  (Pl.'s Dec., Docket No.

153 ¶ 4.)  He further indicates that he will submit the necessary paperwork to the

---

   [13]   According to Defendants, there are three levels of EMT certifications: (1) EMT-Basic which authorizes holders to "provide basic emergency medical care"; (2) EMT-Intermediate which authorizes holders to "provide limited acts of advanced emergency medical care"; and (3) EMT-Paramedic which authorizes holders to provide additional "limited acts of advanced emergency medical care."

   [14]   Plaintiff has also apparently let other certifications lapse including his firefighter certification and two separate hazardous materials certifications.  However, it appears that these additional certifications are not required for the job and Defendants do not argue that reinstatement should be denied based on Plaintiff's failure to hold these certifications.

State of Colorado when he receives the certificate from the National Registry certifying that he passed the National Registry test.  Plaintiff agrees that his reinstatement may be contingent upon the successful renewal of his EMT-Basic certification.  Although six or more months have passed since his declaration, Plaintiff has not supplemented the record with any evidence of his certification.

Defendants argue that they now require all new firefighters to hold an EMT-Paramedic certification, which allows the firefighter to perform life-saving medical techniques such as administering intravenous drugs and performing tracheotomies to open oral airways.[15]  They claim that this new requirement is necessary because approximately fifty percent of the calls they respond to are medical calls rather than fire calls.  Defendants also submit that the current system (which is constrained by the District's budget) utilizes four-person shifts, of which one is the captain, one is an engineer, and the other two are non-captain firefighters who are EMT-Paramedic certified.  Defendants argue that there are times when the four-person shift must respond to two calls at once in teams of two and, therefore, to provide the community with the necessary care, it is necessary for all non-captain firefighters to hold the EMT-Paramedic certification.  Defendants allege that of the twelve firefighters in the District, nine are certified as EMT-Paramedics.  These nine are the non-captain firefighters, which is the position that Plaintiff held before his termination.  Defendants argue that it is not necessary that the captains be EMT-Paramedics because on a

---

[15]  Notably, Defendants admit that "at a minimum" firefighters must hold an EMT-Basic certification.

call they deal more with logistics rather than with actual medical care.

Plaintiff responds that he was not required to hold an EMT-Paramedic certification prior to his termination and that the District has never applied such a policy to preexisting employees.  Plaintiff submits affidavits indicating that other firefighters currently employed with the District have been told that they are not required to obtain the EMT-Paramedic certification.  As noted above, Plaintiff concedes that his reinstatement may be contingent upon his successful recertification as an EMT-Basic.

I agree with Plaintiff that the failure to hold an EMT-Paramedic certification is not a sufficient basis on which to deny reinstatement.  First, the EMT-Paramedic certification is a hiring requirement and not an employment requirement as admitted by Defendants and evidenced by the District's employment of firefighters possessing only an EMT-Basic certification.  Indeed, even though Defendants argue that EMT-Paramedic certification is necessary for the District to properly function, there is no evidence that, had Plaintiff never been unlawfully terminated, he would be required to obtain an EMT-Paramedic certification or would have been terminated for any failure to obtain an EMT-Paramedic certification.  Therefore, the currently designated requirement that newly hired firefighters possess an EMT-Paramedic certification cannot bar Plaintiff's reinstatement because it places Plaintiff in the position he would be in but for the constitutional violation.  Furthermore, I note that Plaintiff has agreed that his reinstatement may be contingent upon his ability to obtain an EMT-Basic

certification, which is the "minimum requirement" as admitted by Defendant.[16]

    b.    *Trustworthiness*

Second, Defendants argue that Plaintiff's dishonest actions with respect to the vandalism inquiry make reinstatement inappropriate.  Defendants argue that Plaintiff has shown himself to be untrustworthy because he admitted during trial that his statement to Chief Mele that he needed the pen for a meeting was untruthful.  They argue that the ability of the District to perform its duties in the community will be undermined by Plaintiff's untrustworthiness because the firefighter position is unique in that it entails "responding to emergent situations to safeguard life and property" and requires a great deal of trust between firefighters and with the community. Defendants submit affidavits from Chief Mele and Chief Sowles that Plaintiff's actions have irreparably harmed their trust in Plaintiff.

Although admitting he was untruthful as to the pen incident, Plaintiff denies he covered anything up or sought to mislead Chief Mele, rather the untruthful words "just popped out of my mouth."  Regardless, and as Plaintiff admits, he was dishonest and the issue before me is whether this particular dishonesty was such an aggravating

---

[16]  Although Defendants submit Supreme Court authority appearing to indicate that the person to be reinstated must be "presently qualified" for the position, *see Franks v. Bowman Traps. Co., Inc.*, 424 U.S. 747, 773 n.31 (1976), I find this authority neither binding nor persuasive.  The *Franks* case addressed a discrimination claim in which the ordered remedy was "priority consideration" for certain driving jobs and determined that the person must be "presently qualified" for the driving job to be "eligible for priority hiring."  *Franks*, 424 U.S. at 773 n.31.  *Franks* is distinguishable both because it is not a true reinstatement claim and because it was addressing the qualifications to do the job—a situation not present here as both parties acknowledge that the minimum qualification is EMT-Basic.

circumstance as to make reinstatement impossible. *Bingman*, 937 F.2d at 558.  In

making this determination I take note of Defendants' affidavits and arguments but

also observe that to rely upon their self-serving statements would allow them to deny

the Plaintiff the highly preferred remedy after a jury has determined he was unlawfully

terminated.  I also note that the jury's verdict was at least an implicit rejection of

Defendants' case that he was terminated for this very dishonesty.  Countering

Defendants' affidavits are those affidavits from current firefighters in the District

indicating they would be happy to work with Plaintiff again and the incidents of this

case would not affect their working relationship with him.  I can only speculate as to

why the jury and these firefighters minimized Plaintiff's dishonesty but both support

the conclusion that this incident of Plaintiff's dishonesty was not the reason for his

termination and does not form a sufficient basis to deny the preferred remedy of

reinstatement.

       c.     *Termination of another firefighter*

Finally, Defendants argue that in order to reinstate Plaintiff, a currently

employed firefighter would have to be terminated.  Plaintiff responds that this is not a

sufficient reason in the Tenth Circuit to deny reinstatement.  Plaintiff also alleges that

the District very recently hired a full-time firefighter, at a time when they were aware

of Plaintiff's reinstatement claim.  Plaintiff is correct that it is not appropriate to deny

reinstatement based on Defendants' hiring of a replacement worker.[17]  *Jackson*, 890

---

    [17]  I note that if the District very recently hired a new full-time non-captain firefighter, then Defendants' argument with respect to replacing a current firefighter is especially unpersuasive.  This remains true even if, as Defendants allege, the hiring

F.2d at 233–44 (""While reinstatement may displace an innocent employee, the enforcement of constitutional rights (may have) disturbing consequences.  Relief is not restricted to that which would be pleasing or free of irritation."" (quoting *Reeves*, 828 F.2d at 1101–02)).

Accordingly, it is ordered

1.   Defendants' Motion for a New Trial Based on the Excessive Size of the Verdict or - In the Alternative - Motion for Remittitur (Docket No. 138) is granted as to *remittitur* and is otherwise denied.

2.   Plaintiff shall elect by written pleading, filed on or before August 24, 2009, either a *remittitur* of damages to reduce the amount to $322,145 ($250,000 for emotional distress and $72,145 for economic damages) or a new trial limited to the issue of damages, including mitigation.  If Plaintiff elects *remittitur*, judgment shall enter in that amount.  If not, a new trial on the issue of damages shall be ordered.

3.   Defendants' Motion to Dismiss Based on Plaintiff's Spoliation of Relevant Evidence (Docket No. 141) is denied.

4.   Defendants' Motion for a New Trial Because the Verdict was Against the Weight of the Evidence (Docket No. 154) is denied.

5.   Plaintiff shall, on or before September 4, 2009, file with this Court proof that he

---

was actually the re-hire of a former firefighter with the district.  The fact remains that the District hired a full-time employee while they knew that Plaintiff's reinstatement claim was pending creating for themselves the situation of having to terminate an existing firefighter should Plaintiff's reinstatement claim be granted.

has been certified by the State of Colorado to have passed EMT-Basic

requirements.  The Defendant District shall reinstate Plaintiff as a firefighter

within the District within thirty days after that filing.


DATED at Denver, Colorado, on August 5, 2009.

                                        BY THE COURT:


                                        s/ Walker D. Miller
                                        United States Senior District Judge